## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-23173-CIV-ROSENBAUM

ARTURO ROJAS, *et al.*, individually and on behalf of
all similarly situated,

      Plaintiffs,

vs.

GARDA CL SOUTHEAST, INC.,

      Defendant.

_____/

### ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION, AND DENYING MOTION FOR EQUITABLE TOLLING

This matter is before the Court upon Plaintiffs' Motion for Conditional Certification and

Facilitation of Court-Authorized Notice Pursuant to 28 U.S.C. § 216(b) [ECF No. 17] and Plaintiffs'

Motion for Equitable Tolling [ECF No. 39]. The Court has considered the Motions, all supporting

and opposing filings, and the record in the case. For the reasons set forth below, the Court now

grants in part Plaintiff's Motion for Conditional Certification and denies Plaintiffs' Motion for

Equitable Tolling.

### BACKGROUND

On September 3, 2013, Plaintiff Arturo Rojas filed a Complaint alleging that Defendant

Garda CL Southeast, Inc. ("Garda"), failed to pay him and other similarly situated employees at the

overtime rate for hours worked over forty hours a week, in violation of the Fair Labor Standards Act,

29 U.S.C. § 201, *et seq.* ("FLSA"). ECF No. 1 at 1, ¶¶ 1, 2. Garda is a Georgia company that

specializes in the armed transport of bank funds. ECF No. 17 at 2. Garda employed Rojas at its Orlando branch as a driver/messenger from May 9, 2012, to June 11, 2013. ECF No. 4-1 at 1, ¶ 2. Since the filing of Rojas's Complaint, nine other Garda employees have joined the action as named Plaintiffs.

Garda notes that "drivers" and "messengers" are not separate positions, but rather, the same employee rotates between the driver and messenger roles depending on the route. ECF No. 40 at 5. Each route is typically assigned a driver and a messenger. *Id.* While the driver operates the armored vehicle, the messenger is responsible for the organization and paperwork related to the route, loading and unloading the vehicle, and replenishing or withdrawing funds from Automatic Teller Machines when applicable. *Id.* Messengers must be prepared to operate the vehicle should the driver become incapacitated. *Id.*

Plaintiffs allege that Garda considers its drivers/messengers exempt from the FLSA's requirement to pay overtime after forty hours of work per week and, instead, implements an "overtime-over-fifty" policy, under which work is paid at the overtime rate only after fifty hours of work per week. ECF No. 17 at 1. On September 30, 2013, Plaintiffs filed the instant Motion for Conditional Certification, seeking to conditionally certify a class consisting of current and former drivers/messengers who worked for Garda's Tampa, Orlando, West Palm Beach, and Miami branches in the last three years. ECF No. 17 at 23.

## *DISCUSSION*

The FLSA provides "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" a cause of action against their employers for alleged violations of the Act. 29 U.S.C. § 216(b). The purposes of § 216(b) collective actions include "(1)

reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264-65 (11th Cir. 2008) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, a class action brought under the FLSA can include only those plaintiffs who affirmatively opt into the action by filing their consent in writing in the court in which the action is brought. 29 U.S.C. § 216(b); *see also De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218-19 (11th Cir. 2007). As a result, the mere decision to certify a § 216(b) action does not, on its own, create a class of plaintiffs as in a Rule 23 class action. *Morgan*, 551 F.3d at 1259 (quoting *Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)). It follows that "the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees" and create the class. *Morgan*, 551 F.3d at 1259 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

In order to facilitate the early certification of a class, where proper, the Eleventh Circuit has sanctioned a two-stage procedure to effectively manage § 216(b) actions in the pretrial phase. *Morgan*, 551 F.3d at 1260. The Eleventh Circuit recommends but does not require that district courts follow this two-tiered approach. *See Hipp*, 252 F.3d at 1219. The first stage occurs during discovery and is called the "notice stage" or "conditional certification." If the court approves conditional certification in this first stage, putative class members receive notice of the action and the opportunity to opt in. Because of the conditional nature of the putative class, the standard at this first stage is described as "not particularly stringent," *Hipp*, 252 F.3d at 1214, "fairly lenient," *id.* at 1218,

and "flexib[le]," *id.* at 1219. *See Morgan*, 551 F.3d at 1260-61.

The second stage occurs if the defendant employer moves for decertification. *Morgan*, 551 F.3d at 1261. This stage usually happens "just before the end of discovery, or at its close," when the court has a more extensive and detailed factual record. *Id.* Because the court has a more complete record and can make a more informed decision, this stage is "less lenient, and the plaintiff bears a heavier burden." *Id.* (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).

## I. FLSA Exemption

As a threshold matter, Garda argues that the purported class is exempt from the overtime-pay requirements of the FLSA, so conditional certification of the class would be inappropriate. ECF No. 40 at 9-12. Garda relies on *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180 (11th Cir. 1991), where the court concluded that armored-truck drivers and guards—not unlike the proposed class here—are exempt from the overtime-pay requirements of the FLSA. *Id.* at 182.

Title 29, United States Code, Section 213(b)(1) exempts from the FLSA's overtime-pay requirement employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." The Secretary of Transportation may, under 49 U.S.C. § 31502, determine qualifications and maximum hours of service for employees who "(1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2 (internal citations omitted); *see also Baez*, 938 F.2d at 181-182.

The *Baez* Court found that the defendant armored-truck company was a motor carrier whose transportation of property was subject to the Secretary's jurisdiction under the Motor Carrier Act, thus satisfying the first prong of the motor-carrier exemption test. *Baez*, 938 F.2d at 182. As to the second prong, the plaintiffs asserted that they did not engage in activities directly affecting the safety of operation of motor vehicles in interstate commerce because (1) they were not engaged in interstate commerce, as their vehicles did not cross state lines, and (2) their employment did not directly affect the safety of the vehicles. *Id.* at 182. The *Baez* Court found the first argument unavailing because even if the plaintiffs themselves did not cross state lines during the course of their employment, the checks and other instruments that they transported were bound for banks outside of the state and were destined to cross state lines. *Id.* (citing *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37 (5th Cir. 1962)). As a result, the court concluded, the plaintiffs engaged in the interstate commerce of these instruments even if their own engagement was comprised of an entirely intrastate portion of that commerce. As for the plaintiffs' second argument that they did not directly affect the safety of vehicles, the Eleventh Circuit disagreed, citing regulations that state that armed guards and other drivers' helpers "perform[] services which affect the safety of the vehicle." *Baez*, 938 F.2d at 182 & n.4 (quoting *Opelika*, 299 F.2d at 43); *see also* 29 C.F.R. § 782.4(a).

This Court recognizes that the class of employees that Plaintiffs seek to conditionally certify here share many similarities with the class of employees that the *Baez* Court found to be exempt from the FLSA. But at the conditional-certification stage, the question before the Court is (1) whether other employees of the defendant employer desire to opt-in; and (2) whether these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1282-83 (S.D. Fla.

2012) (quoting *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir.1991)).

"[I]n making a determination in whether to conditionally certify a proposed class for notification

purposes only, courts do not review the underlying merits of the action." *Pares v. Kendall Lakes*

*Auto., LLC*, No. 13-20317, 2013 WL 3279803, at *3 (S.D. Fla. June 27, 2013) (quoting *Colson v.*

*Avnet, Inc*., 687 F. Supp. 2d 914, 926 (D. Ariz. 2010)).

Garda's assertion that drivers/messengers are exempt from the FLSA, even if accepted as

true, does not lead to the conclusion that these drivers/messengers must by necessity not be similarly

situated—the question before the Court now. If anything, Garda's uniform classification of the class

as exempt from the FLSA weighs in favor of the argument that the class is, in fact, similarly situated.

*See Reyes v. AT & T Corp*., 801 F. Supp. 2d 1350, 1361 (S.D. Fla. 2011).

Garda nevertheless cites a number of cases to suggest that the Court may deny class

certification based on the merits of the FLSA claim. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S.

165 (1989), concerned class notification in an action brought under the Age Discrimination in

Employment Act,[1] but nothing in that case suggests that it is appropriate to deny class certification

based solely on the merits of the plaintiffs' claims. *Id.* at 174. Quite the opposite, *Hoffman-La Roche*

states that "[i]n exercising the discretionary authority to oversee the notice-giving process [of

conditional certification], courts must be scrupulous to respect judicial neutrality. To that end, trial

courts must take care to avoid even the appearance of judicial endorsement of the merits of the

---

[1] The Age Discrimination in Employment Act of 1967 ("ADEA") incorporates by reference the "powers, remedies, and procedures" provided in FLSA § 216(b). 29 U.S.C. § 626(b); *see also Grayson*, 79 F.3d at 1107 (noting that "ADEA class actions . . . as a general matter, track the enforcement procedures of the FLSA"). As a result, case law construing the collective-action provisions of the ADEA is instructive in FLSA collective actions.

action." *Id.* If the Court must avoid endorsing the merits of the case, it must likewise refrain from denying a motion for class certification on the basis that it believes that the plaintiff class will not succeed on the merits—particularly where, as here, the plaintiff class has not had the opportunity to brief the merits of its claim since the merits were raised for the first and only time in response to Plaintiffs' Motion for Conditional Certification, not on a motion to dismiss.

The lower-court cases that Garda cites similarly do not support Garda's contention that it is "appropriate" to deny class certification based on the merits of the case. *See Rappaport v. Embarq Mgmt. Co.*, No. 07-468-19, 2007 WL 4482581, at *5 (M.D. Fla. Dec. 18, 2007) (denying certification because plaintiffs failed to demonstrate a reasonable basis that similarly situated individuals existed across the proposed class, not because of the merits of their claims); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 799 (E.D. La. 2007) (finding it appropriate to conditionally certify class, given the lenient standard at the notice stage, because putative class members were similarly situated).

Garda's arguments that the putative class members are exempt from the FLSA are more properly considered on a motion to dismiss, where the Court may apply the standards of Rule 12(b), Fed. R. Civ. P., to Plaintiffs' Complaint. Furthermore, the issue of FLSA exemption, which cuts to the heart of Plaintiffs' claims, is more suitably before the Court when fully briefed by the parties, not when raised for the first time in Garda's Response to a Motion for Conditional Certification. Accordingly, the Court does not opine on whether Garda's exemption arguments are valid at this time.

## II. The Number of Other Employees Who Desire to Opt In

As noted above, Courts of this District generally look at two major factors to determine whether conditional certification is proper: (1) whether other employees of the defendant employer desire to opt-in; and (2) whether these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Bennett*, 880 F. Supp. 2d at 1282-83.

With respect to the first factor, Plaintiffs' burden to show the existence of other potential opt-ins is not onerous. "[T]he existence of just one other co-worker who desires to join in is sufficient to 'rais[e] the Plaintiff's contention beyond one of pure speculation.'" *Bennett*, 880 F. Supp. 2d at 1283 (quoting *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006)). Courts in this District have conditionally certified classes with as few as two affidavits from potential plaintiffs. *See Wynder v. Applied Card Sys., Inc.*, No. 09-80004, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (two affidavits indicating that nine other employees would opt in if given the opportunity sufficient to conditionally certify class); *see also Reyes*, 801 F. Supp. 2d at 1356 (affidavits from five named plaintiffs and consent forms from seven employees sufficient to conditionally certify class); *Pendlebury v. Starbucks Coffee Co.*, 10 Wage & Hour Cas. 2d 401, at *3 (S.D. Fla. 2005) (affidavits from two named plaintiffs and four other individuals sufficient to certify class of store managers at seven different locations across four states); *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (affidavits of seven plaintiffs that indicated that others desired to opt in sufficient for conditional certification). On the other hand, when plaintiffs provide no evidence in support of the existence of other employees who wish to opt in or when the only evidence is an unsworn statement from the plaintiffs' counsel that "[u]ndoubtedly, there exist similarly situated individuals who would opt-in to this action if given notification," conditional

certification is not proper. *Williams v. Imperial Hospitality Group, Inc.*, 2010 WL 3943590, at *2 (S.D. Fla. 2010); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004).

Here, ten Garda employees have filed notices of their consent to join as party plaintiffs, and an additional four employees have filed notices of their intent to join the collective action if the matter is certified. *See* ECF Nos. 4; 5; 12; 15; 16; 18-24; 28; 34. While all of these fourteen declarations indicate that the declarants are current or former Garda employees, only two of the notices of consent to join as party plaintiffs and two of the notices of intent to join the collective action expressly state that the declarants are drivers/messengers. *See* ECF Nos. 4; 5; 18; 23. Rojas is the only declarant to assert that he has personal knowledge of other Garda drivers/messengers—and not just other Garda employees—who have indicated their interest in joining the collective action, though his affidavit does not indicate how many other drivers/messengers have indicated their interest. *See* ECF No. 4.

Though the Court recognizes that up to ten of these affidavits are from Garda employees who may not, in fact, be drivers/messengers, the four affidavits from drivers/messengers and Rojas's indication that he has personal knowledge of other drivers/messengers interested in opting in are sufficient to establish a reasonable basis that other drivers/messengers do indeed desire to opt in. *See Reyes*, 801 F. Supp. 2d at 1356; *Guerra*, 2006 WL 2290512, at *4 (evidence that at least one other employee desires to opt in is the "minimum quantum of evidence" necessary to raise a plaintiff's contention "beyond one of pure speculation").

### III. Whether the Other Employees Are Similarly Situated

The FLSA provides that actions may be brought under the statute "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," 29 U.S.C. § 216(b), but the FLSA does not define how "similarly situated" employees need to be to bring a collective action under § 216(b), nor has the Eleventh Circuit adopted a precise definition of the phrase. *Morgan*, 551 F.3d at 1259. Nevertheless, case law suggests that district courts look to whether the other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions," *id.* at 1259 (quoting *Dybach*, 942 F.2d at 1567-68), although those two factors by themselves are not dispositive, *see Anderson*, 488 F.3d at 953 (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). In evaluating these considerations, the Eleventh Circuit has emphasized that courts must analyze whether employees are *similarly* situated and "not whether their positions are identical." *Morgan*, 551 F.3d at 1260 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

To conduct this analysis, courts of this District commonly consider five factors at the conditional-certification stage: "(1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; [and] (5) the extent to which the actions which constitute the violations claimed by Plaintiffs are similar." *Smith v. Tradesmen Intern, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (citing *Stone v. First Union Corp.*, 203 F.R.D. 532 (S.D. Fla. 2001)); *see also Carrera v. UPS Supply Chain Solutions, Inc.*, 2011 WL 1303151, at *4 (S.D. Fla. Mar. 31, 2011) (applying the same five factors).

-10-

No one factor is dispositive, *Reyes v. Carnival Corp.*, No. 04-21861, 2005 WL 4891058, at \*7 (S.D. Fla. May 25, 2005), and the factors taken as a whole are not necessarily determinative of status as similarly situated employees, *Meggs v. Condotte Am., Inc.*, 2012 WL 3562031, at \*3 n.5 (S.D. Fla. 2012). Nevertheless, the factors are "insightful and helpful," *Meggs*, 2012 WL 3562031, at \*3 n.5, and the Court applies them here.

### A. Whether Plaintiffs all Held the Same Job Title

As noted above, Plaintiffs seek conditional certification of only drivers/messengers in Garda's Tampa, Orlando, West Palm Beach, and Miami branches. As Garda itself notes, the position of "driver/messenger" is a single position because each employee rotates between the driver role and the messenger role according to the route. Accordingly, the proposed class members all held the same job title.

### B. Whether Plaintiffs Worked in the Same Geographic Location

Plaintiffs seek certification of Garda's drivers/messengers who work or worked at only the Tampa, Orlando, West Palm Beach, and Miami branches. Although a similar geographic location weighs in favor of conditional certification, this factor by itself is "not conclusive," *Hipp*, 252 F.3d at 1219, and the Eleventh Circuit has previously upheld conditional certification of nationwide classes or classes whose members span several states. *See Morgan*, 551 F.3d at 1241 (upholding nationwide class of chain store managers); *see also Hipp*, 252 F.3d at 1219; *Grayson*, 79 F.3d at 1091. Plaintiffs move for certification of a class located only in Central and Southern Florida. The putative class thus works in the same geographic location for the purposes of class certification.

### C. Whether the Alleged Violations Occurred During the Same Period

Plaintiffs have limited the temporal scope of his action to the three years prior to the filing

of the Complaint, and the Complaint suggests that Garda's "overtime-over-fifty" policy was in place during all of this period. *See* ECF Nos. 1 at 6-7, ¶ 48; 17 at 23. Courts of this District have previously certified FLSA collective actions covering similar periods. *See Bennett*, 880 F. Supp. 2d at 1276 (conditionally certifying class for two years of overtime violations); *Peralta v. Greco Intern. Corp.*, 2011 WL 5178274, at *4 (S.D. Fla. Oct. 31, 2011) (approving collective action for work performed over a three-year period). Thus, Plaintiffs meet this factor.

### D. Whether Plaintiffs were Subjected to the Same Policies and Practices

Plaintiffs allege that all members of the putative class were classified by Garda as exempt from the FLSA and subject to Garda's "overtime-over-fifty" policy. This policy states that "employees shall be compensated at one and a half (1 ½) times their straight time hourly rate . . . for all hours worked in excess of fifty (50) hours." ECF No. 5-1 at 4.

Garda disagrees that Plaintiffs meet this prong of the conditional-certification analysis and cites cases in support of the contention that an employer's practice of classifying a group of employees as exempt is not a basis for proceeding collectively. *See* ECF No. 40 at 13-17. These cases, however, stand for the proposition that "the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not *by itself* sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Palacios v. Boehringer Ingelheim Pharm., Inc*., No. 10-22398, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011) (emphasis added) (quoting *Colson v. Avnet, Inc*., 687 F. Supp. 2d 914, 927 (D. Ariz. 2010)). The courts in these cases found that conditional certification of a wide swath of employment types that were all classified as exempt would be improper because of the "highly-individualized nature of the types of exemptions

-12-

at issue." *Colson*, 687 F. Supp. 2d at 927-28 (denying certification of nationwide class of both sales-management representatives and those who perform "substantially the same duties as sales management representatives" because the evidentiary showing that these employees performed the same job duties was "plainly insufficient"); *see also Palacios*, 2011 WL 6794438, at *1, *5 (seeking to certify sales representatives, professional sales representatives, specialty sales representatives, and senior specialty sales representatives that the plaintiff merely "believe[d]" to share common job requirements).

While an employer's classification of a group of employees as exempt, by itself, does not warrant conditional certification, nothing in the cases that Garda cites indicates that classification, by itself, necessarily precludes conditional certification. Uniform classification of a group as exempt under the FLSA, even if not sufficient to prove that the group is similarly situated for the purposes of class certification, certainly does not suggest that the group must be dissimilar. And Garda's own arguments that the drivers/messengers are all uniformly exempt under § 213(b)(1) and the Motor Carrier Act cuts against any suggestion that a highly individualized analysis of the issue of exemption is necessary within the group of drivers/messengers themselves. Furthermore, Garda's drivers/messengers were not merely classified as exempt, but also were paid under the "overtime-over-fifty" policy that was uniformly applied to them. Thus, regardless of whether classification of a position as exempt from the FLSA is a basis for conditional certification, the drivers/messengers were still uniformly subject to a separate "overtime-over-fifty" policy. As a result, Plaintiffs were subjected to the same policy and practices for the purpose of conditional certification.

5. Whether the Actions that Constitute the Alleged Violations are Similar

Plaintiffs allege that Garda's policy of paying drivers/messengers overtime only after fifty

hours of work per week instead of forty violates the FLSA. Garda does not assert that this "overtime-over-fifty" policy was differentially applied to the drivers/messengers or that while some drivers/messengers were subject to this policy, others were not. Thus, this final factor weighs in favor of conditional certification.

Accordingly, based on the totality of the circumstances, Plaintiffs have met their low burden to show the existence of other similarly situated employees who would join a collective action. After the close of discovery, Garda may move for decertification and ask this Court to conduct stage-two certification analysis if it so chooses.

### IV. Notice and Consent Forms

#### A. Limitations Period and Opt-In Period

Having granted Plaintiff's Motion for Conditional Certification, the Court now moves to the disputed issues about the form and content of the Notice-and-Consent Forms to be sent to potential opt-in plaintiffs. *See* ECF No. 40 at 17-20. As an initial matter, Garda objects to Plaintiffs' request that the class include all drivers/messengers employed at any time after September 30, 2010—three years before the filing of the Complaint. The statute of limitations in FLSA actions is normally limited to two years, but the limitations period extends to three years if the cause of action arises out of a "willful violation" of the FLSA. 29 U.S.C. § 255(a). Garda attempts to analogize the instant matter to *Cohen v. Allied Steel Buildings, Inc*., 554 F. Supp. 2d 1331 (S.D. Fla. 2008), in which the court discounted a plaintiff's attempt to extend the notice period to three years because "[t]he only reference to any allegedly willful violations of the FLSA by Defendants is a conclusory allegation of willfulness in the Complaint absent any facts to substantiate the same." *Id.* at 1335.

Here, however, both Plaintiffs' Complaint and Garda's own Response to the Motion for

Conditional Certification indicate that Garda determined that its drivers/messengers were exempt from the requirements of the FLSA and therefore instituted an overtime-pay policy outside of the bounds of the FLSA's requirements. Though it is possible that at the time of instituting its "overtime-over-fifty" policy Garda was entirely unaware of these FLSA requirements and the exemption argument is a post-hoc justification of its policy, the record nevertheless suggests that it is also possible—or even more likely—that Garda was, in fact, aware of the FLSA and the alleged FLSA exemption when it instituted the policy. Thus, Plaintiffs' allegation of "willfulness" is not a mere conclusory allegation, and the facts of the case support providing notice based on a limitations period of three years. The Court, however, does not opine on whether, on the merits, a three-year limitations period necessarily applies to Plaintiffs' claims, and Garda may challenge the three-year limitations period at an appropriate time in the proceedings. *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 943 (W.D. Ark. 2007).

Garda also suggests that the proper period for providing notice should be three years prior to the date of notice and up to the date of notice, instead of three years prior to the filing of the Complaint as Plaintiffs propose. ECF No. 40 at 17. FLSA actions must "be commenced" within two or three years after the cause of action accrued. 29 U.S.C. § 255(a). An action is considered commenced with respect to party plaintiffs named in the complaint on the date that the complaint is filed, and the action is commenced for those not named in the complaint on the subsequent date that a written consent to join is filed with the court. *Id.* § 256. Thus, the limitations period for opt-ins runs from the time of the filing of their written consents, and not from the time that they receive notice. For the purposes of simplicity, Plaintiffs shall amend their Notice and Consent Form to limit the statute-of-limitations period to the date three years prior to the date of this Order, or December

-15-

23, 2010. This would prevent potential opt-in plaintiffs with no cause of action after December 23, 2010, from needlessly filing written consents that would be barred by the statute of limitations.

Plaintiffs separately moved for equitable tolling of the limitations period for thirty-one days, ECF No. 39, in response to the Court's granting of Garda's motion for a thirty-day extension to respond to the Motion for Conditional Certification, ECF No. 37. Equitable tolling is an "extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "[E]quitable tolling of the limitations period is warranted 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Downs v. McNeil*, 520 F.3d 1311, 1319 (11th Cir. 2008) (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000)).

Courts grant equitable tolling in instances when a defendant misleads the plaintiff into allowing the statutory period to lapse, when the plaintiff has no reasonable way of discovering the wrong against her before the end of the statutory period, or when the plaintiff timely files a technically deficient pleading but was diligent in all other aspects. *Justice*, 6 F.3d at 1479 (internal citations omitted). Here, Plaintiffs do not allege that any of these extraordinary circumstances took place. Plaintiffs instead assert that "[t]he fact that at least 31 days in [the] statute of limitations has passed" because of Garda's extension of time is "extraordinary." ECF No. 39 at 2. Plaintiffs' argument that a routine extension of time is an "extraordinary circumstance" is unconvincing.

Significantly, when plaintiffs seek equitable tolling related to notice provided to potential opt-ins in FLSA actions, they must provide evidence of the diligence of the potential opt-in plaintiffs—not the named plaintiffs who are already part of the case—to assert their rights within the

statutory period in the face of extraordinary circumstances. *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521, 2008 WL 700174, at *4 n.1 (S.D. Fla. Mar. 13, 2008). Plaintiffs here have provided no evidence of the potential opt-in plaintiffs' efforts to assert their rights. Instead, Plaintiffs merely blanketly claim that "[i]n the case at hand 31 days accounts for as low as 4.3% . . . to as much as 100% of a putative class member's claims." ECF No. 39 at 3. But Plaintiffs provide no evidence to support their conclusory assertion that some opt-in plaintiffs' claims will be entirely barred but for thirty-one days of equitable tolling.[2] Furthermore, even if such an employee whose claims will be barred but for equitable tolling existed, Plaintiffs have made no showing of extraordinary circumstances that prevent that employee from filing a written consent to join as a party plaintiff now—as nine other named plaintiffs have done—instead of waiting for the Court's ruling on conditional certification. Thus, Plaintiffs' Motion for Equitable Tolling is denied.

Garda's Response to the Motion for Conditional Certification also notes that the Motion does not set a deadline for potential opt-ins to file their written consents. ECF No. 40 at 19. As a result, Garda proposes that the Court limit the opt-in period to forty-five days, noting that courts in this District routinely set opt-in deadlines of forty-five days or fewer. *See Bell*, 223 F.R.D. at 683 (opt-in deadline thirty-nine days after issuance of order granting conditional certification and twenty-two days after deadline to send out notice forms). Plaintiffs' Reply to Garda's Response does not object

---

[2] Given that the start and end date of the limitations period for opt-in plaintiffs is dependent on the date that their written consent forms are filed with the Court—a date that is still indeterminate at this time—the Court does not expect Plaintiffs to assert with exactitude that some potential opt-ins may have their claims entirely barred but for equitable tolling of thirty-one days. Nevertheless, Plaintiffs have provided no evidence of a substantial reduction in the number of Garda drivers/messengers that took place approximately three years before the date of this Order or other circumstances that would lead to the conclusion that a denial of thirty-one days of equitable tolling could materially limit—or possibly entirely bar—some employees' FLSA claims.

to or discuss the proposed forty-five-day opt-in period. *See* ECF No. 45. Accordingly, opt-in plaintiffs shall file their written consents with the Court within forty-five days of the Court's approval of the revised Notice-and-Consent Form.

### B. Language of the Notice-and-Consent Form

Garda objects to the language used in Plaintiffs' proposed Notice-and-Consent Form in a number of respects. First, Garda contends that the Form's description of the lawsuit should be patterned after the description used in *Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680 (S.D. Fla. 2004), which states that, "There is no money available now and no guarantees that there will be. However, you have a choice to assert your legal rights in this case." *Id.* at 683. The Proposed Form, however, already contains language stating, "The Court overseeing this lawsuit has not made any determination whether anyone is entitled to any compensation," and, "A recovery of money is not certain for those who do participate in the lawsuit." ECF No. 17-1 at 2-3. This language sufficiently conveys to potential opt-ins that no guarantee exists that money will be made available to them if they opt in, and it is not necessary for Plaintiffs to insert the exact language from *Bell* that Garda requests.

Second, Garda argues that the Notice and Consent Form should not merely declare that the employee consents to be represented by Plaintiffs' counsel but also should aver that the employee has claims of alleged FLSA violations similar to those of Plaintiffs. *See id.* Though Plaintiffs' proposed Form notifies employees that they may join "if [they] fit the definition" of the certified class, the Court agrees with Garda that the Form should contain an area where opt-ins must write in their positions at Garda and the positions' start and end dates to ensure that only those employees who truly meet the class definition join the action. Thus, Plaintiffs' Form should contain language

mirroring paragraph two of the form in *Bell*, 223 F.R.D. at 683.

Third, Garda objects to language in the Proposed Consent Form authorizing Plaintiffs' counsel to reuse the consent form in a separate or related action against Garda in the event that the class in this action is decertified. ECF No. 17-3 at 1. Plaintiffs provide no legal support for the notion that they can reuse submitted consent forms in separate actions, and the notion that Plaintiffs may reuse consent forms in separate actions that, no matter how related, are likely to involve different claims or different class definitions is untenable. Accordingly, Plaintiffs shall delete this language from the Consent Forms.

Fourth, Garda contends that the Form must advise potential opt-ins that they may be liable for costs and attorney's fees if Garda prevails. ECF No. 40 at 18. In contrast to Garda's position, the proposed Form states that "[i]f there is no recovery of judgment in Plaintiffs' favor, you will not be responsible for any attorney's fees." ECF No. 17-1 at 3. But unless named Plaintiffs choose to separately enter into agreements with the opt-ins that waive their liability for attorney's fees, these opt-ins may indeed be liable for attorney's fees and costs. *See Mayer v. Wall St. Equity Grp., Inc.*, 514 F. App'x 929, 932 (11th Cir. 2013) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998)) (noting that the FLSA entitles a prevailing defendant to attorney's fees and costs when the district court finds that the plaintiff litigated in bad faith). Thus, the Form should notify plaintiffs that they may be liable for attorney's fees and costs if there is no judgment in their favor and the Court concludes that they litigated in bad faith. *See White v. Subcontracting Concepts, Inc.*, No. 08-620-30, 2008 WL 4925629, at *2 (M.D. Fla. Nov. 14, 2008); *Simpkins v. Pulte Home Corp.*, No. 08-130-19, 2008 WL 3927275, at *9 (M.D. Fla. Aug. 21, 2008).

Fifth, Garda objects to Plaintiffs' request that copies of the Proposed Form be provided in

both English and Spanish. ECF No. 17 at 20. The declaration of one of the employees who has filed a notice of her consent to join if the class is certified indicates that many of her former co-workers feel more comfortable speaking Spanish than English and thus requests that notice be provided in both languages. ECF No. 15-1 at 1, ¶ 8. Garda asserts that this declaration is "speculative" and provides an insufficient basis to warrant the issuance of bilingual notice, given that the declaration indicates that bilingual notice is merely preferable but not absolutely necessary. ECF No. 40 at 18. Because the opt-ins' participation in this litigation may have serious consequences for their legal rights, the Court sees no reason to prejudice many potential plaintiffs by withholding from them a version of the Form that is in a language that may be easier for them to understand. Accordingly, Plaintiffs may provide bilingual Notice-and-Consent Forms in English and Spanish.

Sixth, Garda notes that Plaintiffs have not submitted proposed language to be printed on the envelope used to send the Notice-and-Consent Forms. ECF No. 40 at 20. Garda cites another case of this District that found that language on the envelope that read "Court Authorized Notice of Unpaid Overtime Lawsuit" improperly suggests judicial endorsement, *Anish v. Nat'l Sec. Corp.*, No. 10-80330, 2012 WL 3818283, at *4 (S.D. Fla. Sept. 4, 2012), and seeks to prevent the occurrence of such an event in this case. The Court finds the concern to be reasonable. Therefore, Plaintiffs may use language on their envelopes that notes "Notice of Pendency of Collective Action" but may not use language describing the notice as "Court Authorized" or otherwise suggesting judicial endorsement. *Id.*

C. Transmittal of Notice

Garda also objects to Plaintiffs' request that the Notice be posted in Garda's work locations because it would "unduly interfere[] with Garda's business operations." ECF No. 40 at 18. Garda

cites no cases in support of its contention that plaintiffs may not post notice of a pending collective action at the defendant-employer's place of business. Courts of this District have previously allowed plaintiffs to post notice of their collective actions at the defendants' work sites. *See Reyes*, 801 F. Supp. 2d at 1363 (noting that, while the defendant did not oppose the plaintiff's request to post the notice, "no reason [exists] why this request should not be granted"). Federal regulations require employers to post notices in conspicuous places in their places of work that notify employees of their rights under the FLSA. 29 C.F.R. § 516.4. Here, the posting of the notice of the collective action—which similarly notifies Garda's drivers/messengers of their rights under the FLSA in relation to the instant matter—is no more burdensome. Accordingly, notice of the collective action may be posted in Garda's work locations.

In addition, Garda objects to Plaintiffs' request to issue a second "reminder" notice to those potential opt-ins who have not filed consent forms with the Court by fourteen days before the close of the notice period. ECF No. 40 at 18. The Court agrees that a reminder notice is "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit." *Anish*, 2012 WL 3818283, at *2 (quoting *Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010)) (noting that the only precedent for sending reminder notice occurred in a case where the defendants consented to sending the reminder notice). Thus, Plaintiffs shall not send a reminder Notice-and-Consent Form to potential opt-ins who have already received the original Notice-and-Consent Form.

Finally, Garda requests that the contact information of potential opt-ins be provided to a third-party administrator, instead of directly to Plaintiffs, because, according to Garda, Plaintiffs' main motive in moving for conditional certification is to come in contact with potential future clients

if the instant case is not resolved in Plaintiffs' favor. The Court has already noted that Plaintiffs may not reuse any of the consent forms filed in this case in any separate case filed in the future, and Garda has cited no support for why the Court should stray from the standard practice of allowing potential opt-ins' contact information to be provided directly to the plaintiffs. *See Anish*, 2012 WL 3818283, at *5; *Reyes*, 801 F. Supp. 2d at 1352. Accordingly, Garda shall provide the potential opt-ins' contact information directly to Plaintiffs.

### *CONCLUSION*

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 28 U.S.C. § 216(b) [ECF No. 17] is **GRANTED IN PART;**

2. Defendants are directed to furnish Plaintiffs on or before January 3, 2014, with the names and mailing addresses of all current or former drivers/messengers employed by Garda on or after December 23, 2010;

3. Plaintiffs are **ORDERED** to modify their Notice-and-Consent Form in accordance with Section IV of this Order and to submit it to opposing counsel and to the Court no later than January 2, 2014, for approval before mailing it to the class of potential opt-in plaintiffs conditionally certified pursuant to this Order;

4. Plaintiffs are required to file all Consents to Become Party Plaintiffs in this lawsuit within forty-five days of the Court's approval of their Notice-and-Consent Form;

5.  Plaintiffs' Motion for Equitable Tolling [ECF No. 39] is **DENIED.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 23rd day of December 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record