UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23173-CIV-GAYLES/TURNOFF

ARTURO ROJAS,

    Plaintiff,
v.

GARDA CL SOUTHEAST, INC.,

    Defendant.
    _____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion for Final Summary Judgment on Plaintiff's Claim and Motion for Summary Judgment on the Opt-In Plaintiffs' Claims or Alternatively, Motion to Decertify the Class with Incorporated Memorandum of Law [ECF No. 290] and Plaintiffs' Motion for Final Summary Judgment [ECF No. 292]. The Court has reviewed the Motions and the pertinent portions of the record and is otherwise fully advised. For the reasons stated below, the Defendant's Motion for Final Summary Judgment is GRANTED in part and Plaintiffs' Motion for Final Summary Judgment is DENIED.

## BACKGROUND

The central question in this action is whether the Plaintiff, Arturo Rojas ("Rojas"), and the opt-in plaintiffs (collectively the "Plaintiffs") are covered employees under the Fair Labor Standards Act ("FLSA") or exempt employees under the Motor Carrier Act ("MCA"). To make this determination, the Court must analyze Garda and Plaintiffs' activities.

1

### I. The Parties

Garda is a full-service cash logistics company that transports currency, negotiable instruments, and other valuables, such as credit cards, lottery tickets, and safety deposit boxes, for financial institutions, retailers, commercial establishments, and government institutions. Garda also provides automatic teller machine ("ATM") services for financial institutions, including cash replenishment and deposit pulls. To facilitate the bulk of its services, Garda's South Florida branches[1] use a fleet of seventy-nine armored vehicles. It is undisputed that armored vehicles weigh more than 10,000 pounds. Garda also, on occasion, uses vehicles that weigh less than 10,000 pounds ("light vehicles"). Garda's South Florida branches utilize six light vehicles.

Garda is certified by the Federal Motor Carrier Safety Administration ("FMCSA") and holds U.S. Department of Transportation ("DOT") FMCSA number 193838. Garda also has the assigned motor carrier number MC-155115. To maintain its motor carrier status, Garda must submit annual paperwork to the FMCSA and report safety incidents to the DOT.

Plaintiffs are or were drivers or messengers for Garda in the South Florida region. They each worked, at least in part, on armored vehicles transporting currency, negotiable instruments, and other valuables. Rojas, the named plaintiff, only worked on armored vehicles. *See* Deposition of Arturo Rojas [ECF No. 291-7, 28: 14-25]. Several of the opt-in plaintiffs also used one of Garda's light vehicles or their personal vehicles for a portion of their job-related duties. Plaintiffs only worked on routes within Florida.

---

[1] Garda operates four branches in South Florida: Tampa, Orlando, West Palm Beach, and Miami.

**II.     Overtime Compensation**

Garda has an "Overtime-Over-Fifty" policy wherein its drivers/messengers are paid overtime wages for every hour worked over fifty hours per week. Pursuant to Garda's policy, drivers/messengers are not paid overtime for their hours worked between forty and fifty hours per week.

**III.    The Litigation**

On September 3, 2013, Rojas filed this action alleging that Garda failed to pay him and other similarly situated employees overtime wages in violation of the FLSA. On December 23, 2013, the Court conditionally certified a class consisting of current and former drivers/messengers who worked for Garda's South Florida branches in the last three years.

On February 17, 2013, Garda moved for summary judgment, arguing that Plaintiffs are exempt from the provisions of the FLSA under the MCA. Plaintiffs argue that the MCA does not apply, and, even if it did, the Technical Corrections Act places Plaintiffs back within the purview of the FLSA. Plaintiffs have also moved for summary judgment arguing that there are no disputed issues of material fact regarding FLSA coverage and Garda's failure to pay overtime wages. Garda does not dispute that it failed to pay Plaintiffs overtime wages for hours worked between forty and fifty hours. Rather, Garda's argument is centered on whether the FLSA applies at all.

## ANALYSIS

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

3

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

**I.   The FLSA and the MCA**

The FLSA requires employers to pay hourly employees one and a half times their regular hourly rate if they work over forty hours in a week. 29 U.S.C. § 207 (a)(1). However, the FLSA has several exemptions, including the MCA. The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). The MCA's applicability depends "on whether the Secretary has the power to regulate, not whether the Secretary has actually exercised such power." *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181 n.2 (11th Cir. 1991).

4

As the employer, Garda has the burden to show that the MCA exemption applies. *See Abel v. Southern Shuttle Serv.*, 631 F.3d 1210, 1212 (11th Cir. 2011). Therefore, Garda must establish (1) that it is subject to the jurisdiction of the Secretary of Transportation (the "Secretary") and (2) that its employees' duties directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. *See* 29 C.F.R § 782.2(c). *See also Baez*, 938 F.2d at 181-82; *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) ("The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.'")

The Eleventh Circuit, in *Baez*, held that the MCA applied to armored car drivers and guards because their employer was subject to the Secretary of Transportation's jurisdiction and the employee plaintiffs were engaged in activities directly affecting the safety of operation of motor vehicles in interstate commerce – even where the armored cars did not cross state lines. *Baez,* 938 F.2d at 181-182. Several courts in this and other districts have found that the MCA applied to Garda's armored car drivers and guards. *See Bule v. Garda CL Southeast, Inc.*, Case No. 14-21898, 2014 WL 3667815 at *3 (S.D. Fla. July 17, 2014); Vellajo v. Garda CL Southwest, Inc.*, 56 F.Supp.3d 862, 869 (S.D. Tex. 2014); *Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 4955932 at *3 (N.D. Ill. 2012).

Despite the prior rulings in this and other courts, Plaintiffs argue that Garda is not subject to the Secretary's jurisdiction and that they were not engaged in interstate commerce. In addition, Plaintiffs argue that, even if the MCA applies to the facts of this case, the Technical Corrections Act ("TCA") provides FLSA overtime protection to Plaintiffs.

A.     **Garda's Activities and Jurisdiction under the MCA**

To satisfy the first prong of the MCA exemption, that Garda is subject to the Secretary's jurisdiction, it must show that it (a) is a motor carrier and (b) transports passengers or property in interstate commerce. *See* 29 C.F.R. §782.2(c).

### Motor Carrier

A "motor carrier" under the MCA is a "person who provides commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A commercial motor vehicle has a gross vehicle weight greater than 10,000 pounds. 49 U.S.C. § 31132(1). Garda's South Florida branches have a fleet of seventy-nine armored vehicles weighing more than 10,000 pounds and six vehicles weighing less than 10,000 pounds. Garda also sometimes calls on its employees to use their personal vehicles. Because the overwhelming majority of Garda's fleet are commercial motor vehicles used as transportation for compensation, the Court finds that Garda qualifies as a motor carrier under the MCA. *See e.g. Bule*, 2014 WL 3667815 at *3 (finding MCA applies to Garda).

### Interstate Commerce (Garda)

The Court also finds that Garda transports property in interstate commerce. Although Plaintiffs dispute that they were engaged in interstate commerce because their routes did not cross state lines, there can be little argument that Garda transports goods in interstate commerce such that it is subject to the Secretary's jurisdiction. Indeed, Garda holds an FMCSA number and has an assigned motor carrier number. Garda submits annual paperwork to the FMCSA and must report safety incidents to the DOT. This clearly puts Garda within the purview of the Secretary's jurisdiction. *See Bule*, Case No. 14-21898, 2014 WL 3667815 at *3 (finding Garda "is subject to the jurisdiction of the Secretary of Transporation."); *Vallejo*, 56 F.Supp.3d at 869 ("Garda is a motor carrier under the Act.")

### B.     Plaintiffs' Activities

To satisfy the second prong of the MCA exemption, Plaintiffs must have (a) engaged in activities affecting the safety of motor vehicles (b) while transporting passengers or property in interstate commerce.  *See* C.F.R. §782.2.

### Safety

Plaintiffs are drivers and/or messengers for Garda.  As noted above, their duties included the use of armored vehicles to transport currency, negotiable instruments, and other valuables.  MCA regulations provide that employees who drive, ride on, and/or load and unload armored trucks affect the safety of motor vehicles.  29 C.F.R. §§ 782.2(b)(1), 782.3, 782.4, 782.5.  In *Baez*, the Eleventh Circuit held that drivers and helpers on armored vehicles affect the safety of operation of motor vehicles.  *Baez*, 938 F.2d at 182 (citing *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37 (5th Cir. 1962)).  *See also Vallejo*, 56 F.Supp.3d at 869-70 (holding that "Motor Carrier Act applies to driver/messenger/guards performing the same kind of work as the plaintiffs"); *Hernandez v. Brink's, Inc.*, No. 08-20717, 2009 WL 113406 at *4 (S.D. Fla. Jan 15, 2009) (holding that drivers, messengers, and ATM Technicians all affected the safety of operation of motor vehicles). Accordingly, the Court finds that Plaintiffs have engaged in activities affecting the safety of motor vehicles.

### Interstate Commerce (Plaintiffs)

Plaintiffs performed all of their duties within the state of Florida.  This does not, however, preclude a finding that Plaintiffs engaged in interstate commerce.  Under the MCA, an employee's intrastate movement is considered interstate commerce if it constitutes "a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." 29 C.F.R § 782.2 (a).  To make this determination, the Court focuses on the "shipper's fixed and

7

permanent intent at the time of shipment" to have the property continue in interstate commerce. *State of Texas v. United States of America & Interstate Commerce Comm'n*, 866 F.2d 1546, 1556 (5th Cir. 1989). "It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an interstate destination." *Hernandez*, 2009 WL 113406 at *3. In *Baez*, the Eleventh Circuit held that armored car drivers and helpers were engaged in interstate commerce even though they only traveled within the state of Florida. This was because "the transported checks and other instruments were bound for banks outside the state of Florida." *Baez*, 938 F.2d at 182. Indeed, courts have consistently held that armored car drivers and helpers engage in interstate commerce even when they only travel within one state. *See Id.*; *Hernandez*, 2009 WL 113406 at *3; *Bule*, 2014 WL 3667815 at *3 ("Eleventh Circuit precedent establishes that Plaintiff's activities for Defendant, that is transporting currency, coin, checks, and other valuables between banks, the Federal Reseve Bank, bank processing centers, check cashing facilities and other locations, involve transportation of property in interstate commerce as defined by the MCA); *Vallejo*, 56 F.Supp.3d at 871. Based on well-established precedent in this and other circuits, the Court finds that Plaintiffs have engaged in interstate commerce and the MCA applies.

## II. Technical Corrections Act

Plaintiffs argue that even if the MCA applies, the SAFETEA-LU Technical Corrections Act of 2008 ("TCA") extends the application of the FLSA to Plaintiffs. The TCA broadened the FLSA's overtime requirement to all "covered employees." *See* Pub.L. No. 110-244, Title III, § 306(a) (2008).

A "covered employee" is an individual:

(1) Who is employed by a motor carrier or motor private carrier...;

(2) Whose work, in whole or in part, is defined –

>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles –
>>
>>> (i) designed or used to transport more than 8 passengers (including the driver) for compensation;
>>>
>>> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passenger for compensation; or
>>>
>>> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* at § 306(c). Accordingly, under the TCA, Garda employees who worked "in part" on motor vehicles weighing 10,000 pounds or less are covered under the FLSA.

It is undisputed that Plaintiff Rojas only worked on vehicles weighing more than 10,000 pounds. See [ECF No. 291-7]. Accordingly, Rojas is not a covered employee as defined by the TCA and, therefore, is not covered by the FLSA. As a result, the Court grants Garda's summary judgment motion with respect to Rojas.

There are, however, several opt-in Plaintiffs that used one or more of Garda's light vehicles and/or their personal vehicles to perform their duties. Garda argues that employees who work on mixed fleets are not covered employees under the TCA, citing *Cedano v. Alexim Trading Corp.*, No. 11-20600, 2011 WL 523592 (S.D. Fla. Nov. 1, 2011) and *Hernandez*, 2009 WL 113406 at * 5. However, the Court finds the Third Circuit's opinion in *McMaster v. Eastern Armored Services, Inc.*, 780 F.3d 167 (3d Cir. 2015) instructive. In

9

*McMaster*, the Court held that a driver/guard who drove half of her trips on vehicles weighing less than 10,000 pounds worked "in part" on smaller vehicles and therefore was a "covered employee" under the TCA. *Id*. at 170 ("We need not now affix a firm meaning to the term "in part." Whatever "in part" means, it is certainly satisfied by McMaster, who spent 49% of her days on vehicles less than 10,000 pounds."). *See also Gordilis v. Ocean Drive Limousines, Inc.*, No. 12-24358, 2015 WL 1858380 at *3 (S.D. Fla. 2015) (finding genuine issue of material fact as to the amount of time the plaintiffs worked on smaller vehicles). Based on the record, the Court finds that disputed issues of material fact exist as to whether the opt-in plaintiffs worked "in part" on vehicles weighing 10,000 pounds or less. Accordingly, Defendant's motion for summary judgment is denied as to the opt-in plaintiffs.

**III. The Conditional Class**

In its Motion, Garda requests that the Court decertify the class. Plaintiffs respond that Garda's motion to decertify is untimely and assert, in a conclusory fashion, that the Plaintiffs are similarly situated. The Court disagrees.

### Timeliness

This action has been pending for two years and assigned to three judges in this district. Both Garda and Plaintiffs have, at different times, requested modifications of the scheduling order. As a result, the record does not reveal an exact deadline for motions to decertify. Accordingly, the Court finds it is appropriate, at this time, to consider Garda's request to decertify the class.

**Similarly Situated**

The Court finds that Plaintiffs are not similarly situated. On a motion to decertify, plaintiffs must prove that class members are similarly situated and must show a reasonable basis for their claim of classwide FLSA violations. *Grayson v. K–Mart Corp.,* 79 F.3d 1086, 1096–97 (11th Cir.1996). "[L]ogically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 953 (11th Cir.2007). "[A]s more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir.2008).

To determine whether class members are similarly situated, courts may consider: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Anderson,* 488 F.3d at 953 (internal citations and quotations omitted). "Ultimately [ ] the Court must determine whether, based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical, efficient, and fair to proceed as a collective action rather than requiring separate actions." *Pares v. Kendall Lakes Automotive,* No. 13–20317–CIV, 2013 WL 3279803, at *6 (S.D.Fla. June 27, 2013)

Plaintiff Rojas is not a covered employee under the FLSA, yet there are still disputed issues of material fact as to whether any of the opt-in Plaintiffs are covered under the FLSA. Determining coverage will require an individual inquiry into the amount of time each opt-in plaintiff used a light or personal vehicle as opposed to an armored vehicle. One plaintiff might spend most of his time using light vehicles, another, like Rojas, might spend no time using light vehicles, and others might fall somewhere in between. The determination of whether an employee is covered by the FLSA or

11

the MCA requires an individual factual inquiry regarding the actual work performed by each individual employee.  *See McMaster,* 780 F.3d at 170.  This highly individualized inquiry is not appropriate as a collective action.  Accordingly, the Court grants Garda's motion and decertifies the class.  The opt-in Plaintiffs may file individual actions against Garda should they wish to pursue their claims.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment is **GRANTED** as to Plaintiff Arturo Rojas**.**  Defendant's Motion to Decertify the Class is **GRANTED**.  The conditional class is decertified.  The opt-in plaintiffs' claims are **DISMISSED** without prejudice.  It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Final Summary Judgment [ECF No. 292] is **DENIED**.  It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** and all pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of August, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE